UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATHEW JASON HICKS,

    Plaintiff,

v.                                         Case No. 8:25-cv-1806-KKM-NHA

PODPOPULI LLC et al.,

    Defendants.
_____

**ORDER**

Pro se plaintiff Mathew Hicks sues Audacy, Inc., Audacy Operations, LLC, PodPopuli LLC, Great Love Media LLC, Brian Howie, and Christina Forward for retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12203, as well as for state-law tort, contract, and consumer protection claims related to Hicks's purchase of the defendants' podcast hosting and distribution services. *See* 2d Am. Compl. (Doc. 68). Hicks also moves for sanctions against Audacy, Inc., and its counsel. (Docs. 65, 82). In a previous order, I questioned this Court's subject matter jurisdiction and directed Hicks to explain how the ADA applies to the defendants, and in turn, how Hicks's request for written communication was a "statutorily protected expression" on the facts alleged. *See* (Doc. 86) at 5 (quoting *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016)). After reviewing Hicks's response, Resp. (Doc. 91),

I dismiss the action for lack of subject matter jurisdiction because the ADA does not cover the defendants' alleged conduct. I also deny Hicks's motions for sanctions.

Hicks's operative complaint alleges that he purchased from defendant PodPopuli a $2,995 package promising "[h]osting and distribution for one full year via Audacy" and [p]osting and distribution on the Audacy feed" for Hicks's podcast, "The Tragedy Academy." 2d Am. Compl. ¶¶ 18–19, 27; *see id.* ¶¶ 1, 14–40 (alleging that the defendants sold him a "podcast hosting and distribution package that did not exist as described" and induced Hicks to transfer over his virtual "podcast catalog"). After becoming dissatisfied with the podcast hosting and distribution service, Hicks alleges that, via an email to PodPopuli employees, he "requested a reasonable accommodation (written-only communication) due to PTSD." *Id.* ¶ 37; *see id.* ¶ 59 (alleging that Hicks "engaged in protected activity (written-only accommodation request, June 1, 2025)," and that his "request opposed practices he reasonably believed violated the ADA"). According to Hicks, "[t]he PodPopuli Defendants immediately retaliated," including by asking him for a phone call. 2d Am. Compl. ¶ 38.

As I explained in my previous order, "[a] retaliation claim under Title V is predicated on an individual suffering a harm post-asserting rights *under a separate ADA provision*." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024) (emphasis added); *Frazier-White*, 818 F.3d at 1258 (requiring that plaintiff

"engaged in a statutorily protected expression"). Those separate ADA provisions, "42 U.S.C. §§ 12101–12213, prohibit[] discrimination against Americans with disabilities in the areas of employment, public services, public accommodations, and services operated by private entities." *Elliott v. Sherwood Manor Mobile Home Park*, 947 F. Supp. 1574, 1577 (M.D. Fla. 1996). Hicks's complaint plainly does not allege discrimination in employment or public services, and he does not argue for either context.

Instead, Hicks argues that the ADA applies to the defendants here because "[t]he services [he] purchased were expressly linked to in-studio production and coordination across Defendants' nationwide network of six physical podcast studios," which Hicks believes are "service establishment[s]" and thus "public accommodation[s]." Resp. at 1 (citing 42 U.S.C. §§ 12181(7)(F), 12182(a)). Even if the defendants' physical recording studios qualify as public accommodations under the ADA,[1] Hicks must still allege "some nexus between the alleged violation and [the] physical, concrete place of

---

[1] This proposition is doubtful. Public accommodations include, among other places, "a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or *other service establishment*," 42 U.S.C. § 12181(7)(F) (emphasis added), but do not include "private clubs" or "other establishment not in fact open to the public," *id.* §§ 12187, 2000a(e). Unlike the listed "service establishment[s]," Hicks does not allege that PodPopuli or Audacy's studios are generally accessible to the public as opposed only to their pre-authorized, paying members. *See, e.g.*, 2d Am. Compl. ¶ 30(c) (alleging PodPopuli's "exclusive access to Audacy's studio in New York").

3

public accommodation." *Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1269 (M.D. Fla. 2019) (citing *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1284 (11th Cir. 2002)); *see Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 753 (11th Cir. 2018) (finding nexus where "the alleged inaccessibility of Dunkin' Donuts' website denies [plaintiff] access to the services of the shops that are available on Dunkin' Donuts' website"); *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (dismissing complaint because the plaintiffs failed to establish a nexus between the website and a physical place).

Hicks does not satisfy this requirement. Hicks does not allege that he contracted with PodPopuli or Audacy to use any of their physical spaces. In fact, just the opposite. Hicks purchased PodPopuli's "Annual Remote Production Services Membership," which provides, among other things, "[o]nboarding and redirect of existing feed so as not to lose any downloads or subscribers," podcast "[h]osting and distribution" services, and "[p]osting and distribution on the Audacy feed." Notice (Doc. 22) at 11–14; *see* (Doc. 22-2) at 88–89 (explaining that Hicks's podcast guests are "recorded via Zoom" and not in PodPopuli's studios); *id.* at 226–228 (referencing Hicks's "remote producer"). The remote "hosting and distribution platform was . . . the fundamental basis of the transaction." 2d Am. Compl. ¶ 30(a). More, Hicks's complaint makes clear that he "did not intend to use the New York studio." 2d Am. Compl. ¶ 30(c). Because Hicks neither purchased the right to use the defendants'

4

purportedly "public accommodations," nor intended to use them, no nexus exists between Hicks's demand for written communication about the "Remote Production Services Membership" and access to a protected physical space. Absent this nexus, Hicks's ADA claim "is wholly insubstantial and frivolous'" and cannot confer supplemental jurisdiction over his remaining state-law claims. *McQueary v. Child Support Enf't*, 812 F. App'x 911, 913 (11th Cir. 2020) (per curiam) (quoting *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998)); *Peterson v. Ramirez*, 428 F. App'x 908, 909 (11th Cir. 2011) (per curiam) ("Sometimes, a case may be dismissed for lack of subject-matter jurisdiction if it is clear the claims on which jurisdiction is based are patently without merit."); *see* FED. R. CIV. P. 12(h)(3).

Although this Court lacks subject matter jurisdiction over Hicks's claims, I maintain jurisdiction to resolve his pending motions for sanctions. *See Hyde v. Irish*, 962 F.3d 1306, 1309–10 (11th Cir. 2020) ("[S]anctions under Federal Rule of Civil Procedure 11 are a 'collateral' issue and thus a court may decide a Rule 11 sanctions motion even if it lacks jurisdiction over the underlying case." (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992)); *id.* at 1310 (holding the same for "sanctions under a court's inherent powers or [28 U.S.C.] § 1927"). Hicks's two motions are without merit.

In his first motion seeking sanctions under Rule 11 and the Court's inherent authority, Hicks claims that Audacy's counsel "served upon [him] a

5

materially false and deceptive Corporate Disclosure Statement, which they then deliberately shielded from the Court by failing to file it, in direct violation of FRCP 7.1." 1st Mot. for Sanctions (Doc. 65) at 2. According to Hicks, Audacy "attempt[ed] to litigate from behind a bankrupt corporate shell, to conceal the true parties in interest, and to mislead both [Hicks] and this Court." *Id.* at 2–3. Hicks then filed numerous notices and supplements, as well as an unauthorized reply, in support of his position that Audacy's counsel had to be prompted to file similar disclosures in previous cases before this Court. *See* (Docs. 66–67, 70–72). In response, Audacy acknowledges that its counsel "inadvertently" sent a "non-finalized" disclosure document to Hicks, believing in good faith that the final document was not yet due to be filed because no standing order had been entered. 1st Resp. (Doc. 69) at 1–3, 8–10; *see* (Doc. 54) (denying Hicks's motion to file a second amended complaint because "Defendants have not filed their disclosure statement and informed Plaintiff that the document he reviewed had not been finalized").

Hicks's first motion fails for the simple reason that he does not attack "a pleading, written motion, or other paper" that was "present[ed] to the court" by Audacy's counsel. FED. R. CIV. P. 11(b). A court has discretion to award Rule 11 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a

6

reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). But Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." Advisory Committee Notes to Rule 11, 1993 Amendments. *Cf.* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests."). Additionally, Audacy's view that it did not have to file its disclosure statement was not unreasonable under the circumstances, *see* (Doc. 5) (detailing IDEAL Program procedures and requirements), and its inadvertent communication of the draft document to Hicks does not provide a basis for sanctions under this Court's inherent authority, which requires "subjective bad faith." *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017).

In his second motion for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, Hicks argues that after he served his initial motion, Audacy's counsel "offered contradictory [corporate disclosure statement] explanations," disputed which Audacy corporate entity they represented, and "repeat[ed] positions [in its motion to dismiss] at odds with prior-filed materials." 2d Mot. for Sanctions (Doc. 82) at 1–2 (alleging "post-safe-harbor" misconduct). Audacy's counsel again responds that Rule 11's limitations preclude much of Hicks's motion, that they accurately represented the scope of representation, and that the balance of his motion attacks

7

legitimate legal arguments made in Audacy's first motion to dismiss. 2d Resp. (Doc. 83) at 4–7; *see* (Doc. 83-1) at 4 (counsel explaining to Hicks that "appearance on behalf of a parent entity does not constitute or create an attorney-client relationship with a subsidiary"). I agree. As explained above, Hicks's continued complaints regarding Audacy's un-filed, non-final disclosure statement are not actionable under Rule 11. Likewise, neither this Court's inherent authority nor § 1927 provide an avenue for sanctioning Audacy or its counsel absent evidence of subjective bad faith, egregious conduct, or conduct which "multiplies the proceedings in any case unreasonably and vexatiously." *See Purchasing Power*, 851 F.3d at 1224–25 (explaining that when no evidence of subjective bad faith is present, the standard "can be met if [a party's] conduct is so egregious that it could only be committed in bad faith").

In its initial motion to dismiss—later mooted by Hicks's Second Amended Complaint—Audacy raised threshold challenges to its liability by arguing that Hicks "solely spoke to, and contracted with PodPopuli and its representatives." 2d Resp. at 5. Insofar as Hicks now claims those arguments were "at odds with prior-filed materials" showing a partnership between PodPopuli and Audacy, 2d Mot. for Sanctions at 1, "a disagreement over the interpretation of the facts is not a proper basis for sanctions," *Luke v. Gulley*, 50 F.4th 90, 97 (11th Cir. 2022) (per curiam); *see also Nelson v. MLB Hotel Manager, LLC*, No. 21-10181, 2022 WL 2733720, at *4 (11th Cir. July 13, 2022)

8

(per curiam) ("[A]n opposing party's good-faith disagreement as to the law is not a proper basis for sanctions."). Finally, Hicks fails to show that Audacy's counsel's communications regarding the scope of their representation or the timing of disclosure statements amounts to bad faith conduct or "unreasonable and vexatious" conduct under § 1927. To the contrary, Audacy's counsel's response to Hicks's Rule 11 correspondence—which Hicks failed to file with his motion as requested—demonstrates a good-faith effort to resolve Hicks's disagreements and confusion. *See* (Doc. 83-1) at 1–6.

Accordingly, the following is **ORDERED**:

1. Hicks's Second Amended Complaint (Doc. 68) is **DISMISSED** for lack of subject matter jurisdiction.

2. Hicks's Motions for Sanctions (Docs. 65, 82) are **DENIED.** Hicks's Motion for Leave to File a Reply (Doc. 92) is **DENIED as moot**.

3. The Clerk is directed to **TERMINATE** any pending motions or deadlines and to **CLOSE** the case.

**ORDERED** in Tampa, Florida, on December 15, 2025.

Kathryn Kimball Mizelle
United States District Judge